T.C. Memo. 2007-365

UNITED STATES TAX COURT

HAILU YOHANNES AWLACHEW, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23914-05L.          Filed December 11, 2007.

Hailu Yohannes Awlachew, pro se.

<u>Michael R. Fiore</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  Pursuant to section 6330(d),[1] petitioner

seeks review of respondent's determination sustaining the filing

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect at all relevant times.  Some
monetary amounts are rounded to the nearest dollar.

of a notice of Federal tax lien with respect to petitioner's unpaid 2000 and 2001 Federal income tax liabilities.

FINDINGS OF FACT

Some of the facts have been stipulated. We incorporate the stipulated facts into our findings by this reference. Petitioner resided in Cambridge, Massachusetts, when his petition in this case was filed.

Petitioner timely filed Forms 1040, U.S. Individual Income Tax Return, for 2000 and 2001. On his 2000 tax return, petitioner reported a total tax liability of $105,934, which included an alternative minimum tax (AMT) liability of $64,675 attributable to his exercise of incentive stock options during that year.[2] Petitioner reported tax due of $72,576 for 2000 and sent a $10,000 payment with his 2000 return. On his 2001 tax return, petitioner reported a total tax liability of $77,579 and a tax due of $70,258. The ordinary income reported on petitioner's 2001 return included income from his disposition of incentive stock options during 2001.[3]

---

[2]Secs. 421 and 422 provide for deferred tax treatment of the qualifying exercise of an incentive stock option. However, the favorable tax treatment does not apply for AMT calculation purposes. Sec. 56(b)(3).

[3]Deferred tax treatment under secs. 421 and 422 is not available on the exercise of an incentive stock option if the taxpayer disposes of the share of stock received pursuant to the option within 2 years of the grant of the option or within 1 year of receipt of the share. Sec. 422(a)(1). Petitioner admits that
(continued...)

On June 4, 2001, respondent assessed the tax reported on petitioner's 2000 tax return as well as statutory interest and a section 6651(a)(2) addition to tax. That same day, respondent issued to petitioner a statutory notice of balance due. On June 26, 2001, petitioner made another $10,000 payment toward his unpaid 2000 tax liability.

On July 20, 2001, petitioner entered into an installment agreement with respondent. The record does not disclose the details of the agreement, but beginning on September 20, 2001, petitioner began making monthly payments to respondent. Between September 20, 2001, and January 27, 2003, petitioner made payments totaling $52,600 toward his unpaid 2000 tax liability. Petitioner did not make any voluntary payments toward his 2000 tax liability after January 27, 2003.

On October 18, 2002, respondent assessed the tax reported on petitioner's 2001 tax return, as well as statutory interest and sections 6651(a)(2) and 6654 additions to tax. The record does not disclose whether petitioner made any payments toward his 2001 tax liability.

On or around May 29, 2003, petitioner submitted an offer-in-compromise to respondent. The record does not disclose the

---

3(...continued)
he disposed of shares received as a result of the exercise of his incentive stock options before he had held them for 1 year.

details of petitioner's offer.  On July 29, 2003, respondent rejected petitioner's offer.

On September 13, 2003, respondent issued to petitioner a Final Notice, Notice of Intent to Levy and Notice of Your Right to a Hearing (levy notice), in which respondent announced his intention to levy to collect petitioner's unpaid 2000 and 2001 tax liabilities.  The levy notice also advised petitioner of his right to a hearing with respondent's Appeals Office.  Petitioner received the levy notice on or about September 22, 2003, but he did not request a hearing with respondent.

On or around September 17, 2003, petitioner submitted a second offer-in-compromise.  The record does not disclose the details of petitioner's second offer.  On December 22, 2003, respondent rejected petitioner's second offer-in-compromise.

On March 19, 2004, petitioner submitted a third offer-in-compromise.  The record does not disclose the details of petitioner's third offer.

On July 14, 2004, respondent issued to petitioner a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 (lien notice).  The lien notice informed petitioner that he had a right to request a hearing to appeal the collection action and to discuss optional payment methods.  The lien notice also advised petitioner how to request a hearing and how to obtain a release of the Federal tax lien.

On or about August 16, 2004, petitioner mailed to respondent a Form 12153, Request for a Collection Due Process Hearing (Request). In his Request, petitioner stated that he had lost all of the value of the stock from which his tax liability originated and that the loss was beyond his control because it resulted from a downturn in the economy. Petitioner also claimed that his job security was uncertain, that he was in debt, and that he was a loyal taxpayer. Petitioner asked respondent not to place a lien on his property because of his precarious financial condition.

By letter dated November 10, 2004, respondent's Appeals Office informed petitioner that his Request had been received and that a telephone hearing had been scheduled for December 9, 2004. On November 24, 2004, respondent received a letter from petitioner requesting a face-to-face hearing. Petitioner attached to his request a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and documentation to substantiate the figures on his Form 433-A. On his Form 433-A, petitioner reported assets of $16,000 ($6,000 in cash and $10,000 in investments), $18,500 in credit card debt, and a monthly net income of $2,230.[4]

---

[4]On his Form 433-A, petitioner reported monthly income from salaries of $6,280 and monthly expenses of $4,050. Petitioner's monthly expenses included other expenses of $1,500.

On December 14, 2004, petitioner participated in a face-to-face hearing with a settlement officer. Petitioner and the settlement officer also communicated through correspondence. By letter dated January 25, 2005, the settlement officer informed petitioner that she was sustaining the previous rejection of petitioner's most recent offer-in-compromise.[5] The settlement officer offered petitioner the opportunity to enter into an installment agreement requiring a monthly payment of $1,215. Petitioner rejected the settlement officer's offer, complaining that the amount was too high. By letter dated February 10, 2005, the settlement officer provided petitioner a copy of his previously submitted Form 433-A and a blank Form 433-A and informed petitioner that he had until February 25, 2005, to submit any additional information to assist her in making her determination.

By letter dated February 24, 2005, petitioner again requested relief from the additions to tax and interest that had been assessed for 2000 and 2001 because of his precarious job and financial situations. Petitioner also submitted an updated Form 433-A showing $13,000 in assets ($2,000 in cash and $11,000 in investments), $18,500 in credit card debt, and monthly net income of approximately $355.

---

[5]We assume that this was a rejection of petitioner's third offer-in-compromise (submitted in March 2004).

By letter dated March 16, 2005, the settlement officer informed petitioner that she had adjusted his monthly expenses to meet the national standard for one person.[6] As a result, the settlement officer determined that petitioner was able to make monthly payments of $1,475. The settlement officer also denied petitioner's request for abatement of interest and for relief from the additions to tax. The settlement officer gave petitioner until March 30, 2005, to accept the proposed installment agreement.

By letter dated March 27, 2005, petitioner rejected the proposed installment agreement. Petitioner disputed the settlement officer's adjustments to his monthly expenses as reported on his updated Form 433-A, and he inquired whether any of the AMT that he had paid could be used to offset his unpaid tax liabilities. By letter dated July 21, 2005, the settlement officer offered petitioner a reduced installment agreement with monthly payments of $1,250. She gave petitioner until August 5, 2005, to respond.

By letter dated August 3, 2005, petitioner rejected the installment agreement and once again requested relief based on

---

[6]Respondent informed petitioner that he could claim expenses for only himself because he did not claim his spouse's income. Petitioner never argued that his spouse was unemployed or that he was otherwise supporting his spouse. However, he did testify that he was supporting two aging parents and an ill niece. The record does not disclose any detail of petitioner's support of these individuals.

the poor economy, his lack of knowledge of the tax law, and his fear of losing his job. Petitioner requested guidance on obtaining an abatement of interest and relief from the additions to tax. By letter dated August 9, 2005, the settlement officer detailed the requirements for a request for relief from additions to tax,[7] informed petitioner that respondent was required by statute to assess interest in his case and that the interest could not be abated, and referred petitioner to the Internal Revenue Manual for further information. By letter dated August 29, 2005, petitioner once again requested the abatement of interest and relief from the additions to tax because of the downturn in the economy and his lack of knowledge regarding the tax implications of employee stock options.

On November 18, 2005, respondent issued to petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination). The notice of determination stated that respondent had verified that all statutory and administrative requirements had been met, that respondent had addressed all of petitioner's arguments raised at the face-to-face hearing, and that respondent had determined that the lien appropriately balanced the Government's need for the efficient collection of taxes and petitioner's concern that the

---

[7]The settlement officer used the term "penalties" in the letter, but she was referring to additions to tax.

action not be more intrusive than necessary in light of petitioner's circumstances.

On December 19, 2005, petitioner's petition contesting respondent's determination was filed. The case was scheduled for trial, and a trial was held on October 23, 2006.

OPINION

All property and rights to property of a taxpayer become subject to a lien in favor of the United States on the date a tax liability is assessed against the taxpayer, if the taxpayer fails to meet the Commissioner's demand for payment of the tax liability. Secs. 6321 and 6322. Until a lien notice is filed, a lien is without validity and priority against certain persons, such as judgment lien creditors of the taxpayer. Sec. 6323(a). After the Secretary files the lien notice, the Secretary must provide the taxpayer with written notice of the filing, informing the taxpayer of the right to request an administrative hearing on the matter. Sec. 6320(a)(1), (3)(B). Section 6320(c) requires that the administrative hearing be conducted pursuant to section 6330(c), (d) (other than paragraph (2)(B) thereof), and (e).

At the hearing, a taxpayer may raise any relevant issue, including appropriate spousal defenses, challenges to the appropriateness of the collection action, and collection alternatives, such as an offer-in-compromise. Sec. 6330(c)(2)(A). Additionally, at a hearing, a taxpayer may

contest the existence and amount of the underlying tax liability if the taxpayer did not receive a notice of deficiency for the tax liability in question or did not otherwise have an opportunity to dispute the tax liability. Sec. 6330(c)(2)(B); see also Sego v. Commissioner, 114 T.C. 604, 609 (2000).

Following the hearing, the Appeals Office is required to issue a notice of determination regarding the disputed lien notice. In so doing, the Appeals Office is required to take into consideration the verification presented by the Secretary, the issues raised by the taxpayer, and whether the proposed collection action appropriately balances the need for efficient collection of taxes with the taxpayer's concerns regarding the intrusiveness of the proposed collection action. Sec. 6330(c)(3). The taxpayer may petition the Tax Court for judicial review of the Appeals Office's determination. Sec. 6330(d).

If the taxpayer files a timely petition for judicial review, the applicable standard of review depends on whether the underlying tax liability is at issue. The phrase "underlying tax liability" includes the tax deficiency, any penalties and additions to tax, and statutory interest. Katz v. Commissioner, 115 T.C. 329, 339 (2000). If the underlying tax liability is properly at issue, the Court reviews any determination regarding the underlying tax liability de novo. Sego v. Commissioner,

supra at 610.  The Court reviews all other administrative

determinations for abuse of discretion.  Id.

## I.  Petitioner's Challenge to the Underlying Tax Liabilities

Section 6330(c)(2)(B) provides that a taxpayer may dispute

the existence or amount of his unpaid tax liability if he did not

receive a notice of deficiency or otherwise have an opportunity

to dispute such tax liability.  The "opportunity to dispute such

tax liability" includes a conference with the Appeals Office that

was offered either before or after the tax liability was

assessed.  Sec. 301.6320-1(e)(3), Q&A-E2, Proced. & Admin. Regs.

Most of petitioner's arguments are directed to collection

alternatives and do not raise challenges to the underlying tax

liabilities for 2000 and 2001.  However, during the

administrative proceeding, petitioner inquired about the

possibility of offsetting his unpaid liabilities with the AMT

that he had paid.  The record contains no evidence that the

settlement officer specifically answered his inquiry.  In this

proceeding, petitioner has again raised the question of whether

he can reduce his unpaid tax liabilities by the amount of AMT he

paid.  Although his argument is very unclear, we interpret it as

an assertion that he is entitled to a credit under section 53.

Section 53 authorizes a taxpayer to claim a credit for net

minimum tax paid in prior years, adjusted for specified items.

The minimum tax credit allowable under section 53 is the excess

if any of the adjusted net minimum tax imposed for all prior taxable years beginning after 1986, over the amount allowable as a credit under section 53(a) for such prior taxable years. Sec. 53(b). The section 53 credit, however, is limited to the amount by which a taxpayer's regular tax liability for the year the credit is claimed, less allowable credits, exceeds his tentative minimum tax for the year. Sec. 53(c).

Petitioner did not claim a section 53 credit on either his 2000 or 2001 income tax return, and he did not present any information to the settlement officer that he was entitled to claim such a credit. His inquiry about the possibility of a credit, which he made in one of his letters to the settlement officer during his section 6320/6330 hearing, was insufficient to demonstrate either that he was claiming a section 53 credit for 2000 and/or 2001 or that he was entitled to such a credit.

In addition, even if we treat petitioner's inquiry as a claim for a section 53 credit, petitioner is precluded from pursuing his claim by the fact that he had an earlier opportunity to assert his claim and he did not do so. Petitioner received the September 13, 2003, levy notice, but he did not request a hearing under section 6330 regarding the levy notice. Petitioner's failure to do so precludes him from asserting his claim in this proceeding. See sec. 301.6320-1(e)(3), Q&A-E7,

Proced. & Admin. Regs.; see also <u>Bell v. Commissioner</u>, 126 T.C. 356 (2006); <u>Castleman v. Commissioner</u>, T.C. Memo. 2007-143.

Because petitioner had an earlier opportunity to dispute his underlying tax liability by asserting a claim for a credit under section 53, his underlying tax liability was not properly at issue before the settlement officer considering the lien, and it is not properly before us now.[8]

## II. Petitioner's Challenge to Respondent's Determination To File a Lien

Although petitioner's arguments are not clear, petitioner appears to argue that respondent erred by rejecting collection alternatives he raised and by offering petitioner an installment agreement requiring monthly payments of $1,215. Petitioner appears to argue that his financial condition is so dire that he cannot afford to pay his 2000 and 2001 tax liabilities.

Although section 6330(c) requires respondent to consider relevant issues properly raised by petitioner, including a claim

---

[8]In a posttrial conference call with this Court, petitioner raised a question regarding whether the Tax Relief and Health Care Act of 2006 (TRHCA), Pub. L. 109-432, 120 Stat. 2922, authorizes petitioner to claim a refundable credit under sec. 53 (as amended by TRHCA) that he could then apply against his unpaid tax liabilities for 2000 and 2001. By order, we gave the parties time to explore the effect of TRHCA on this case and to file a joint written status report summarizing their positions. In a joint status report filed on June 1, 2007, respondent stated that TRHCA has no impact on this case, and he explained why. Petitioner simply asserted that he has an AMT credit that he has never used and that he will use any refundable credit he may receive under the new law to pay his 2000 and 2001 tax liabilities.

that a collection alternative such as an installment agreement or offer-in-compromise is more appropriate, respondent is not required to offer petitioner a collection alternative acceptable to petitioner before determining that a lien is an appropriate collection tool.  In this case, petitioner had the burden of demonstrating that a collection alternative was appropriate and that respondent abused his discretion by rejecting the collection alternative.

On the record before us, we cannot conclude that the settlement officer abused her discretion in determining that the lien was appropriate to safeguard respondent's collection of petitioner's unpaid taxes.  Petitioner did not argue at his hearing or at trial that respondent should have accepted one or more of his three offers-in-compromise, and he did not introduce the offers into evidence at trial.  Petitioner made payments for approximately a year and a half of about $1,000 per month.  After 2 full years of nonpayment, petitioner submitted several Forms 433-A showing net monthly income ranging from more than $2,000 per month to $355 per month.  The settlement officer finally determined that petitioner could pay $1,250 per month.[9]

_____

[9]Although petitioner subsequently submitted a revised Form 433-A showing monthly net income of $355, we are satisfied that the settlement officer did not abuse her discretion in concluding that petitioner could pay $1,250 per month.  Petitioner estimated his expenses and did not apply the applicable national and local

(continued...)

Petitioner did not establish that the settlement officer's determination was an abuse of discretion.  We hold, therefore, that the settlement officer did not abuse her discretion by determining that the lien on petitioner's property was appropriately filed and would remain in effect until petitioner's 2000 and 2001 tax liabilities were satisfied.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.

---

[9](...continued)
standards promulgated by respondent for use in calculating a taxpayer's allowable expenses.